JOHANNA CONWAY vs. JAMES M. RUSSELL & others.
PATRICK KELLEY vs. SAME.

Norfolk.    January 17, 1890. — June 20, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Abatement of Nuisance — Board of Health — Agent — Good Faith.*

The agents of the board of health of a town, in laying a drain from a house stand-
ing upon land sloping from the street to a sewer in the street, placed the drain
above the surface of the ground, and filled up the land so as to change the sur-
face and grade; entered and injured the house, and removed and tore down
other structures upon the land; delayed for a long time the completion of the
drain; and used threats and intimidation to prevent the landowner from inter-
fering with the work. *Held*, in an action brought by the landowner against
such agents, that whether they acted in good faith was properly submitted to
the jury.

TWO ACTIONS OF TORT to recover damages caused by the
defendants in abating nuisances upon the plaintiff's premises in
Brookline.    The cases were tried together in the Superior
Court, before *Barker*, J., who allowed a bill of exceptions, in
substance as follows.

The evidence tended to prove the following facts.    The plain-
tiffs were the owners respectively of adjoining lots of land front-
ing on Pearl Street in Brookline, and sloping back from that
street to a brook.    The defendants other than Russell were the
selectmen and *ex officio* members of the board of health of that
town; and he was employed by the board to fill up certain
cesspools on the plaintiffs' premises, which overflowed into the
brook, and to connect the houses thereon with a common sewer
in Pearl Street.    The sewer in that street was laid as deep as
it was possible to lay it in order to allow its discharge into the
main sewer of the town.    On August 1, 1883, the board of
health duly voted to notify, and did notify, the plaintiffs, among
other persons, to abate within ten days nuisances on their re-
spective premises caused by the overflow of the cesspools into
the brook; otherwise, the board would abate the same and
charge the cost to them.    The plaintiffs failed to comply with
the order, and the board, on September 17 following, voted to

connect the plaintiffs' premises with the sewer, and, having duly notified the plaintiffs of that fact, on September 26 employed Russell, who was an experienced mason, to do the work. Thereupon Russell went with a foreman and laborers upon the plaintiffs' premises, and proceeded to fill up the cesspools and to connect the houses by means of drains with the sewer in the street. Everything was done under the supervision and direction of the board of health, and in a good and workmanlike manner. The land of the plaintiffs sloped so sharply from the street towards the brook that the drains, when laid from the houses on the rear of the lots to the sewer at the slightest practicable pitch so as to discharge into the sewer at the lowest point, ran for a part of the distance upon and above the surface of the ground. Russell caused gravel to be brought upon the premises, and to be put under and over the drains to sustain them from beneath and to protect and cover them from above, leaving the surface of the ground uneven in places. At the same time a fence standing between the plaintiffs' lots was torn down, with the exception of the posts, which were left to support planks placed against them to retain the gravel. . Two small hen-houses upon the land of the plaintiff in the second case were also moved out of the way; and, in order to conduct a pipe from one of the drains into a house belonging to the plaintiff in the first case, one of the timbers supporting the kitchen floor was partially cut away. During the laying of the drains, walking over the premises was made more difficult, and the use of the premises was somewhat interfered with; the plaintiffs were deprived of their drainage a portion of the time while the work was going on; and the filling around the drains caused water to run into the cellar of the house of the plaintiff in the second case, and under one of the houses of the plaintiff in the first case, which was built without any cellar. The work was done on the plaintiffs' premises at intervals from September 26 to November 29, 1883, the delay in each case between the times of working extending over several days. When the work was begun, Russell's foreman first came upon the premises, and, when asked by one of the plaintiffs what it was proposed to do, replied that he was going to connect the houses with the sewer; that he had authority from the selectmen; and that if he was

interfered with at all he would bring a policeman there and charge four dollars a day for his services; whereupon no further attempt to hinder the work was made by the plaintiffs.

On the above facts, the defendants asked the judge to rule, as matter of law, that the plaintiffs were not entitled to recover. The judge declined so to rule, but did rule, at the request of the defendants, that the proceedings of the board of health were a sufficient justification of all that was done on the premises by any of the defendants, provided they acted in good faith, and, against the objection of the defendants, submitted the cases to the jury upon the question whether the defendants did what they did in good faith. The jury returned a verdict for the plaintiff in each case; and the defendants alleged exceptions.

*C. A. Williams,* (*M. Williams* with him,) for the defendants.

*J. L. Eldridge,* for the plaintiffs.

W. ALLEN, J. These actions are in tort, to recover damages caused by acts done by the defendants on the lands of the plaintiffs in abating nuisances. The defence is the same in both cases, that the acts were done under authority of the board of health, in laying drains in the premises of the plaintiffs to connect their houses with a common sewer. The only exception taken in each case is to the refusal of the court to rule that, upon the evidence, the action could not be maintained. The court ruled that the proceedings of the board of health, which were in evidence, were sufficient justification for all that was done on the premises by any of the defendants, provided they acted in good faith; and, against the objection of the defendants, submitted each case to the jury upon the question whether the defendants acted in good faith in what they did. The defendants object that there was no evidence of want of good faith on their part, and that it was therefore erroneous to submit that question to the jury.

The nuisances to be abated were the overflowing cesspools, into which drains from the plaintiffs' houses led, and the order of the board of health was to connect the estates of the plaintiffs with the common sewer. This necessarily involved laying drains in the plaintiffs' premises from the common sewer to connect with drains leading from the plaintiffs' houses. Whatever the defendants did for this purpose must be deemed to

have been done in good faith in carrying out the order, and whatever was necessary for the accomplishment of the object must be deemed to have been done for that purpose. Negligence in carrying out the order, whether by doing unnecessary things through mistake, or by doing necessary things in an improper manner, would not be bad faith. To show from the acts and conduct of the defendants that they did not act in good faith towards the plaintiffs in connecting their drains with the common sewer, it must appear that the defendants wilfully and intentionally did unnecessary acts injurious to the plaintiffs, or, perhaps, that they did necessary acts in an improper manner, purposely to the injury of the plaintiffs. A person exercising authority given him by law over the property of another cannot be said to act in good faith if he uses his authority for the purpose of injuring the property, and such purpose may be inferred from the wilful doing of unnecessary acts, the doing of which would afford no such inference if they were necessary to the execution of the authority.

We think that the question whether the defendants so abused their authority that it could be said that they did not act under it in good faith, was properly left to the jury. Evidence tending to show that the defendants placed the drain above the surface of the ground and filled in the plaintiffs' land with gravel so as to change the surface and grade, that they removed and injured structures upon the land, that they entered and injured a house of one of the plaintiffs, that there were long delays in completing the work, and that threats and intimidation were used to prevent one of the plaintiffs from interfering with what the defendants were doing, was competent for the consideration of the jury on the question of the defendants' good faith. The court, for instance, cannot say, as matter of law, that it was necessary to put the drain above the surface of the ground, and to fill in the land, nor that the jury might not have found that it was unnecessary, and intentionally injurious to the plaintiffs. The jury might have been more fully instructed than appears in the exceptions as to what would constitute acting in good faith. Perhaps they were. At any rate, no further instructions in that respect were asked.

*Exceptions overruled.*